# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON E. ROSS, <br><br> Plaintiff, <br><br> v. <br><br> CHIPOTLE MEXICAN GRILL, INC., <br><br> Defendant. | Case No.: 15cv1000-MMA (JLB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 27] |

Plaintiff Damon E. Ross, a California resident, has filed a complaint against Defendant Chipotle Mexican Grill, Inc., a Delaware corporation, alleging wrongful termination and violations of California's wage and hour laws. *See* Doc. No. 1 Ex. A. Defendant moves for summary judgment as to each of Plaintiff's claims. *See* Doc. No. 27. Plaintiff filed an opposition, to which Defendant replied. *See* Doc. Nos. 29, 30. The Court took the matter under submission on the briefs and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 32. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## FACTUAL BACKGROUND[1]

Defendant, Chipotle Mexican Grill, Inc., is the parent company that owns and operates the nationwide and international chain of "fast casual" restaurants known as Chipotle Mexican Grill ("Chipotle"). Defendant has multiple subsidiaries, including Chipotle Services, LLC. Chipotle Services, LLC employs all of the persons who work in Defendant's California restaurants. Plaintiff asserts that Chipotle Services, LLC and Defendant are joint employers of the Chipotle employees who work in the California restaurants. Defendant disputes this assertion.

On June 7, 2013, Chipotle's Encinitas restaurant hired Plaintiff Damon E. Ross as an entry-level "back of house" crew member, or kitchen staff. According to the terms of employment, Plaintiff was an hourly, at-will employee. At that time, Plaintiff received an employee handbook. In addition to describing Defendant's values and employee protocols, the handbook includes a disclaimer that the handbook does not constitute a contract, and a letter from both of Defendant's Chief Executive Officers. An explanatory footnote in the handbook provides: "When used herein, 'Chipotle' means Chipotle Mexican Grill, Inc., a Delaware Corporation and its direct and indirect subsidiaries." The handbook also informs employees that they represent Chipotle and that "Chipotle reserves the right to discipline and terminate employees."

While Plaintiff was employed at the Encinitas restaurant, the General Manager set Plaintiff's work schedule, and another store manager issued Plaintiff's standard performance review, which the General Manager approved.[2] The various Chipotle

---

[1] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Where a material fact is in dispute, it will be so noted. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[2] The management hierarchy at Chipotle restaurants is as follows: General Managers of Chipotle stores report to Field Leaders; Field Leaders report to Team Directors; Team Directors report to Executive Team Directors and/or Executive Regional Directors; Executive Team Directors and/or Executive Regional Directors report to Restaurant Support Officers; Restaurant Support Officers report to one of two co-Chief Executive Officers for Defendant.

managers determined Plaintiff's daily tasks and supervised the execution of his employment duties to ensure compliance with the handbook's proscribed protocols. The General Manager and Field Leader also were responsible for ensuring compliance with the protocols and policies. Chipotle restaurant employees were neither required nor permitted to use their own tools and worked exclusively on the premises of a Chipotle restaurant. During his time at the Chipotle Encinitas restaurant, Plaintiff received all of his paychecks from Chipotle Services, LLC. The paychecks featured Chipotle's "Chipotle Mexican Grill" logo in the background. Defendant and all of Defendant's subsidiaries, including Chipotle Services, LLC, use the same payroll department in Ohio.

In February 2014, Plaintiff's apprentice manager terminated Plaintiff's employment. Chipotle's Encinitas restaurant received an email from the Ohio payroll department with information regarding Plaintiff's final paycheck. Several months later, Plaintiff's counsel requested and received a copy of Plaintiff's personnel record from Defendant's general counsel and Custodian of Records. In February 2015, Plaintiff initiated this lawsuit against Defendant in San Diego County Superior Court, alleging wrongful termination and violations of California's wage and hour laws.

While Plaintiff was employed at Chipotle's Encinitas restaurant, a class action suit on behalf of Chipotle employees simultaneously was proceeding in Los Angeles Superior Court. In August 2012, former Chipotle employee Wendy Segovia filed a proposed class action suit against Defendant, *Wendy Segovia v. Chipotle Mexican Grill, Inc., et al.*, for alleged violations of California's wage and hour laws. Two years later, in August 2014, the parties in *Segovia* finalized a Settlement Agreement. Defendant agreed to pay $2,000,000 in owed wages to the proposed class in exchange for the proposed class's agreement to release Defendant and all of Defendant's subsidiaries, including Chipotle Services, LLC, from all wage and hour claims arising during the relevant time period. The proposed class was defined as all non-exempt employees who had worked in Chipotle's California restaurants between August 8, 2008 and October 1, 2014. In

December 2014, the Los Angeles Superior Court issued a Preliminary Approval of the Settlement.

Because Plaintiff worked at Chipotle's Encinitas restaurant from June 2013 until his employment was terminated in February 2014, Plaintiff was a member of the proposed class in the *Segovia* suit.

Defendant provided Abel Morales, the Claims Administrator in the *Segovia* suit, with the names and addresses of the proposed class members. Morales had until April 7, 2015 to notify the proposed class members of the pending settlement. The Settlement Notice mailed to each class member stated: "If you worked for Chipotle Mexican Grill, Inc. as a non-exempt employee in California during the period from August 8, 2008 through October 1, 2014, a class action settlement will affect your rights." The address Defendant had on file for Plaintiff was outdated, and the notice packet was returned as undeliverable in April 2015. Per protocol, Morales endeavored to locate Plaintiff's correct address and then re-mailed the packet. The second packet also was returned as undeliverable in May 2015.

On April 2, 2015, Defendant was served with Plaintiff's complaint. Defendant filed its Answer and removed this case to federal court on May 4, 2015.

The deadline for class members to opt out of the *Segovia* settlement was May 25, 2015, and the Final Fairness Hearing took place on June 25, 2015. Having never received the notice packet, Plaintiff did not opt out of the *Segovia* settlement.

On July 14, 2015, the Los Angeles Superior Court entered an Order of Final Approval of the Settlement and held that Morales's Duties of Notice as the Claims Administrator had been fulfilled according to the court's order. That same day, Plaintiff and Defendant appeared in federal court for an Early Neutral Evaluation conference ("ENE") in this case.

At the ENE, Defendant's counsel asserted both to Plaintiff and Plaintiff's counsel that Defendant was not the proper defendant because Chipotle Services, LLC was Plaintiff's employer. On July 29, 2015, the parties' counsel met pursuant to Rule 26(f) of

the Federal Rules of Civil Procedure. During that meeting, Defendant's counsel again stated that Chipotle Services, LLC was the proper defendant.

The deadline for Plaintiff to amend his complaint was September 25, 2015. Plaintiff attempted to file an amended complaint adding Chipotle Services, LLC as a codefendant on that day. However, this Court ordered Plaintiff's amended complaint stricken because it did not comply with either the District's Civil Local Rules or Federal Rule of Civil Procedure 15. Plaintiff sought this Court's leave to amend his complaint in November 2015. For reasons set forth in more detail in its March 1, 2016 Order, the Court denied leave to amend. Thereafter, Defendant filed its motion for summary judgment. Defendant seeks summary judgment on the grounds that: (1) Plaintiff's wage and hour claims are barred by the *Segovia* class action settlement; and (2) Plaintiff's claims generally fail because Defendant is not Plaintiff's employer.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker ex rel. Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008), cert. denied, 555 U.S. 827

(2008) (quoting Fed. R. Civ. P. 56(e)). In applying the standard set forth under Rule 56, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## DISCUSSION

### 1. *Whether Plaintiff's Wage and Hour Claims are Barred*

Defendant moves for summary judgment as to Plaintiff's wage and hour claims, arguing that the *Segovia* class action settlement bars those claims. Plaintiff argues that the *Segovia* suit cannot be permitted to have a res judicata effect as to Plaintiff's wage and hour claims. First, Plaintiff contends that Defendant waived the res judicata defense by failing to raise it explicitly in Defendant's Answer. Plaintiff further claims that res judicata cannot apply because (a) Plaintiff did not receive notice of the *Segovia* suit; (b) Defendant may have violated CivLR 40.1(f); and (c) Defendant improperly bypassed Plaintiff's counsel by attempting to contact Plaintiff directly with notice of the *Segovia* settlement.

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). When parallel state and federal actions are proceeding, and the state-court adjudication is reached first, the federal action is governed by preclusion law. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-93 (2005). Under the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts must give state court judgments the preclusive effect those judgments would enjoy under the law of the state in which the judgment was rendered. *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996) (holding that a judgment entered in a class action, including a settlement, is presumptively entitled to full faith and credit under 28 U.S.C. § 1738).

California's res judicata rule applies when: (1) the issue decided in the prior adjudication is identical with the one presented in the new action; (2) the party against whom the defense is asserted was a party or in privity with a party to the prior adjudication; and (3) there was a final judgment on the merits. *See Adam Bros. Farming, Inc. v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148-49 (9th Cir. 2010). "If the matter [raised in the subsequent suit] was within the scope of the [prior] action, related to the subject matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *See Villacres v. ABM Indus., Inc.*, 189 Cal. App. 4th 562, 576 (2010) (citations omitted). If two different causes of action arise from the same violation of a primary right, the two different causes of action are the same claim. *See Adams Bros.*, 604 F.3d at 1149. A primary right is "the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *See id.* (quoting *Fed'n of Hillside & Canyon Ass'ns v. City of L.A.*, 126 Cal. App. 4th 1180, 1202 (2004)). For purposes of res judicata, a settlement in a class action lawsuit is treated as an adjudication on the merits. *See Villacres*, 189 Cal. App. 4th at 585. California courts give preclusive effect to class action settlements in California state courts, barring class members from attempting to re-litigate claims in subsequent actions. *See id.* at 591 (holding that a dismissal with prejudice pursuant to a settlement of employees' prior class action against their employer for alleged wage violations would be res judicata, thereby precluding a subsequent action by an individual class member alleging additional penalties for wage violations).

Here, all of Plaintiff's wage and hour causes of action arise from the same primary right violations as those causes of action litigated in the *Segovia* suit, or otherwise were within the scope of the subject matter litigated in the *Segovia* suit. Further, Plaintiff's causes of action arose during the time period covered by the *Segovia* settlement. Thus, the first element of California's res judicata rule is satisfied. Because Plaintiff was a class member in the *Segovia* suit who did not opt out of the settlement, the second

7

15cv1000-MMA (JLB)

element also is satisfied. Finally, the *Segovia* class action settlement is treated as an adjudication on the merits for res judicata purposes, thereby satisfying the third element. In this case, a California court would grant the *Segovia* settlement preclusive effect against Plaintiff's wage and hour claims.

Once a federal court determines the preclusive effect that a state would give the state court judgment, the federal court then "must decide whether, as an exception to § 1738, it should refuse to give preclusive effect to the state court judgment." *Matsushita*, 516 U.S. at 368 (citing *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)). "Absent a partial repeal of the Full Faith and Credit Act, 28 U.S.C. § 1738, by another federal statute, a federal court must give the judgment the same effect that it would have in the courts of the State in which it was rendered." *Id.* at 369. Because California courts would give the *Segovia* settlement preclusive effect, this Court is bound to do the same unless Plaintiff can persuade the Court to make an exception to § 1738.

In arguing for such an exception, Plaintiff first contends that Defendant waived its right to assert the doctrine of res judicata by failing to raise it as an affirmative defense in its Answer. Requiring res judicata to be pleaded early serves to put the opposing party on notice of the plea, and affords the opposing party the opportunity to argue that the application of res judicata would be inappropriate. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971). However, the Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Magana v. Com. of the N. Mar. I.*, 107 F.3d 1436, 1446 (9th Cir. 1997)). Consequently, a defendant may raise an affirmative defense for the first time in a motion for summary judgment if the delay does not prejudice the plaintiff. *See Magana*, 107 F.3d at 1446. Prejudice results when the late plea necessitates reopening discovery and thereby delaying the proceeding. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

Defendant explicitly raised the affirmative defense of res judicata in its Motion for Summary Judgment and implicitly raised the defense in its Answer[3]. *See* Doc. No. 1, Ex. C. Plaintiff failed to seek clarification of Defendant's affirmative defense of "release." Even if the defense of "release" were insufficient to put Plaintiff on notice of Defendant's res judicata defense, Plaintiff has not been prejudiced because Plaintiff had the opportunity to file an Opposition to Defendant's Motion for Summary Judgment and address Defendant's res judicata defense squarely therein. As no further discovery is required and no delays will result, Plaintiff has not been prejudiced, and Defendant has not waived its right to assert res judicata as a defense.

Plaintiff next claims that res judicata should not apply because Plaintiff did not receive notice of the *Segovia* settlement until the deadline for opting out had passed. A class member may avoid being bound by a class action settlement by collaterally attacking the final state court judgment, in the court where the settlement was finalized, for failure to satisfy the requirements of due process. *See Matsushita*, 516 U.S. at 396. Generally, the non-prevailing party under a state court judgment may not collaterally attack that judgment in federal court. *See Exxon Mobil Corp.*, 544 U.S. at 281. However, "[a] State may not grant preclusive effect in its own courts to a constitutionally infirm judgment," and federal courts are "not required to accord full faith and credit to such a judgment." *Epstein v. MCA, Inc.* (*Epstein II*), 179 F.3d 641, 645 (9th Cir. 1999) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982)).

While a federal court's broad collateral review of a state court class action judgment is inappropriate, a "limited collateral review would be appropriate . . . to consider whether the procedure in the prior litigation afforded the party against whom the judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." *Hesse v. Sprint Corp.*, 598 F.3d 581, 587 (9th Cir. 2010) (quoting *Epstein II*, 179 F.3d at 648-49).

---

[3] In Defendant's Answer, Defendant pleaded "release" as an affirmative defense to Plaintiff's claims but did not specifically assert that the *Segovia* suit was res judicata as to Plaintiff's wage and hour claims.

9

Normally, federal courts will try to determine whether "the party received the requisite notice, opportunity to be heard, and adequate representation by referencing the state court's findings." *Hesse*, 598 F.3d at 588. In *Epstein II*, federal court collateral review of the Delaware Chancery Court's decision was unnecessary because the Delaware Chancery Court expressly found that class members were adequately represented as to the relevant federal claims. *See Epstein II.*, 179 F.3d at 650. Further, in *Matsushita*, the Supreme Court did not challenge the Delaware Supreme Court's judgment that notice to the class of the settlement satisfied due process requirements. *Matsushita*, 516 U.S. at 378.

Here, the Los Angeles Superior Court explicitly found that the Claims Administrator complied with the court's order and that the notice methodology was adequate to alert class members to the settlement. *See* Order Granting Final Approval of Settlement. This Court's inquiry ends there. Because the only violation of due process that Plaintiff has alleged is inadequate notice, it is unnecessary for this Court to review collaterally any other due process aspects of the *Segovia* suit. Had Plaintiff wished to do so, Plaintiff's recourse was to challenge the *Segovia* settlement by appealing to the proper state appellate court.

Plaintiff next argues that res judicata should not apply because Defendant may have failed to comply with this District's civil local rule 40.1(f). This rule provides that when counsel knows a pending action is related to another action "in this or any other federal or state court (whether pending, dismissed, or otherwise terminated), counsel must promptly file and serve on all known parties to each related action or proceeding a notice of related case . . . ." CivLR 40.1(f). Local rules have the force of law. *See Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010). While the violation of a local rule is inappropriate, not all violations are so egregious as to result in drastic consequences. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989). The primary purpose of CivLR 40.1(f) is judicial economy—placing similar actions involving the same plaintiff or defendant before one judge. *See* CivLR 40.1(f). In *De Dios v. International*

10

*Realty & Investments*, an attorney was sanctioned for filing nine identical actions against the same defendant on behalf of nine different plaintiffs in the same court and failing to give the court notice of the related actions. *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011). Here, it appears Defendant may have violated CivLR 40.1(f) by failing to include the *Segovia* suit in its Notice of Related Cases. However, at worst, this violation possibly could result in the imposition of sanctions. Defendant's potential violation of CivLR 40.1(f) cannot preclude the application of res judicata, and this Court finds that, under the circumstances of this case, Defendant's potential violation of CivLR 40.1(f) is not egregious enough to warrant the imposition of any sanctions, much less a claim-dispositive sanction.

Finally, Plaintiff argues that res judicata should not apply because Defendant attempted to contact Plaintiff directly to notify Plaintiff of the *Segovia* suit instead of contacting Plaintiff's attorney. It is established that an attorney may not directly or indirectly contact a party the attorney knows to be represented by another lawyer in the case at bar. Cal. Prof. Conduct Rule 2-100. Here, however, Plaintiff was not represented by an attorney in the *Segovia* suit. Consequently, regardless of the pendency of this action at the time, Defendant did not improperly supply the Claims Administrator of the *Segovia* settlement with what Defendant believed to be Plaintiff's contact information. Plaintiff's argument on this point is without merit.

In sum, the Court finds that Plaintiff has failed to demonstrate that this Court must make an exception to § 1738 and refrain from granting the *Segovia* settlement res judicata effect against Plaintiff's wage and hour claims. Defendant has not waived the defense of res judicata, and Plaintiff cannot collaterally attack the *Segovia* settlement in this Court. Because a California court would grant the *Segovia* settlement preclusive effect as to Plaintiff's wage and hour claims, this Court also must hold the *Segovia* settlement res

11

15cv1000-MMA (JLB)

judicata as to Plaintiff's wage and hour claims.[4] Accordingly, the Court finds that Plaintiff's wage and hour claims are barred.

### 2. *Whether Defendant is Plaintiff's Employer*

Having found that Plaintiff's wage and hour claims are barred by the *Segovia* suit, this Court only will address Plaintiff's claim that Defendant is Plaintiff's joint employer with respect to Plaintiff's first four causes of action arising out of the allegedly wrongful termination of his employment. *See* Doc. 1 Ex. A.

Plaintiff claims that Defendant and Chipotle Services, LLC are Plaintiff's joint employers. At the outset, it is worth noting that "there is a strong presumption that a parent company is not the employer of its subsidiary's employees." *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)) (discussing integrated enterprise theory). Parent corporations are found to be employers only in extraordinary circumstances. *See Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987).

Plaintiff's remaining state law claims are brought pursuant to the California Fair Employment and Housing Act ("FEHA"), the California Labor Code, and the California common law theory of wrongful termination. While FEHA defines "employer," the applicable division of the California Labor Code has not done so[5], and California courts instead use a common law test. *See* Cal. Gov't Code §§ 12926.1(e), 12940; Cal. Lab. Code §§ 90.5(a), 98.6(a), 132a(1); *see Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.4th 522, 530-31 (2014). The same common law test is used to determine whether an

---

[4] The Court notes that Plaintiff has requested that this Court "rule that Mr. Ross' statute of limitations was equitably tolled throughout this action . . ." For the same reasons that this Court cannot address a collateral attack upon the settlement of the *Segovia* suit, this Court also cannot order the Los Angeles Superior Court to toll the statute of limitations. Plaintiff provides no legal precedent holding otherwise.

[5] The California Supreme Court has defined "employer" with respect to wage and hour claims brought pursuant to Industrial Welfare Commission Orders and Labor Code § 1194, but has not indicated whether that definition applies to other sections of the California Labor Code. *See Martinez v. Combs*, 49 Cal.4th 35, 64 (2010).

employment relationship exists for both California Labor Code claims and common law claims of wrongful termination. *See Ayala*, 59 Cal. 4th at 530-31; *Varisco v. Gateway Sci. and Eng'g, Inc.*, 166 Cal. App. 4th 1099, 1103-04 (2008). Consequently, this Court will analyze Plaintiff's argument under both FEHA's definition and the common law test in turn.

Under FEHA, potential liability rests "on the status of the defendant as an 'employer.'" *Vernon v. State*, 116 Cal. App. 4th 114, 123 (2004) (quoting Cal. Gov't Code § 12926; *Kelly v. Methodist Hosp. of S. Cal.*, 22 Cal. 4th 1108, 1116 (2000)). FEHA defines an employer as "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly . . . ." Cal. Gov. Code § 12926. Courts have adopted various tests to determine the existence of an employment relationship, though the common theme among all of them is to "consider the 'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties." *Vernon*, 116 Cal. App. 4th at 124 (quoting *Lambertsen v. Utah Dept. of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996)). Because no "magic formula" exists for divining whether an organization is a joint employer, courts must analyze the factors surrounding the employment relationship. *See id.* at 125. The California Supreme Court has advised that the extent of an employer's control over employees' performance of employment duties is the crucial factor. *See Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 499 (2014) (noting that the degree of control contemplated is "'a comprehensive and immediate level of "day-to-day" authority' over matters such as hiring, firing, direction, supervision, and discipline of the employee" (quoting *Vernon*, 116 Cal. App. 4th at 127-28)). In *Vernon*, the court enumerated a list of factors to be taken into consideration:

> . . . payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote,

> discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.

*Vernon*, 116 Cal. App. 4th at 125 (citation omitted).

Plaintiff tries to prove that Defendant is Plaintiff's joint employer by pointing to the following facts: (1) Defendant drafted and provided Plaintiff's employee handbook; (2) Defendant had access to Plaintiff's personnel file; (3) one pay center distributed paychecks for all of Defendant's employees and Defendant's subsidiaries' employees; (4) the Chipotle restaurant management's chain of command begins with Chipotle restaurant general managers and terminates at Defendant's two co-Chief Executive Officers; (5) Defendant was the sole named defendant in the *Segovia* suit; (6) the Plaintiff class released Defendant and Defendant's subsidiaries pursuant to a settlement agreement in the *Segovia* suit; and (7) the *Segovia* settlement notice stated, "if you worked for Chipotle Mexican Grill, Inc. . . . a class action settlement will affect your rights," *see* Doc. 27 Ex. E to Judicial Notice.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to meet his burden on summary judgment. Plaintiff has not shown that Defendant exerted the "comprehensive and immediate level of 'day-to-day' authority" that characterizes an employer. *See Patterson*, 60 Cal. 4th at 499. Defendant owns and operates the Chipotle restaurants, but Defendant did not set Plaintiff's work schedule, determine the specific nature of the daily work he performed, supervise the execution of his employment duties, or issue standard performance reviews. Rather, Chipotle Services, LLC, employed Plaintiff. Because Defendant owns and operates the Chipotle restaurants, it is unsurprising that Defendant also penned the employee handbook to ensure uniform management and conformity within its restaurants. Plaintiff has not produced sufficient

evidence that Defendant, rather than the Chipotle Encinitas General Manager and other store managers, ultimately oversaw the application and enforcement of the policies and procedures delineated in the handbook. *Id.* at 501 (noting that, while Domino's Pizza, LLC, provided an employee handbook, the franchisee was exclusively responsible for training his employees and implementing any instructions in the handbook). Defendant did have access to Plaintiff's personnel file, but the mere fact of access is not dispositive. *See Vernon*, 116 Cal. App. 4th at 127; *see also McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987) (finding that parent company and subsidiary were integrated enterprise where parent maintained subsidiary's books and records, issued its payroll checks, and paid its bills).

Although the Chipotle restaurant management's chain of command places Defendant's CEOs at the top of the hierarchy, Plaintiff has not shown that this hierarchy would have permitted even the CEOs to hire, terminate, or discipline Plaintiff. The employee handbook states that, as used in the handbook, "Chipotle" means Chipotle Mexican Grill, Inc. and its direct and indirect subsidiaries. *See* Doc. 29 Ex. 6. Thus, when the handbook later asserts that "Chipotle reserves the right to discipline and terminate employees," "Chipotle" could refer to Chipotle Services, LLC. *See id.* Moreover, establishing only that a chain of command eventually ends at the parent's headquarters is insufficient to prove the existence of an employment relationship between a subsidiary's employee and the parent corporation. *See Frank*, 3 F.3d at 1362.

In *Patterson*, the franchisor detailed standards and procedures for preparing and delivering pizzas, operating the store, and maintaining the brand's image. *See* 60 Cal. 4th at 478. However, because the franchisor was not involved in making decisions regarding the hiring, termination, supervision, or discipline of the franchisee's employees, the California Supreme Court held that, under FEHA, the franchisor was not liable as an employer of the employee its franchisee had terminated. *See id.* at 503. While the relationship differs between franchisors and franchisees, as compared to parent companies and subsidiaries, *Patterson* is instructive. Like the franchisor in *Patterson*,

15

Defendant delineated policies and procedures for employees working in Chipotle restaurants but did not directly oversee employees or play any role in the hiring, termination, or discipline of those employees.

Further, while Defendant and its subsidiaries use the same payroll center, Defendant did not pay Plaintiff's wages. Plaintiff's paystubs clearly indicated that Chipotle Services, LLC, was the payor. *See* Doc. 29 Ex. 9. As the court in *Vernon* noted, "[t]he absence of any direct or indirect remuneration from the defendant to the plaintiff, while not controlling, is at least strong evidence that an employment relationship did not exist." *Vernon*, 116 Cal. App. 4th at 126. The Chipotle emblem on all of Plaintiff's paystubs bore the name "Chipotle Mexican Grill," not "Chipotle Mexican Grill, Inc." *See* Doc. 29 Ex. 9. Plaintiff has failed to make the connection between the emblem and Defendant to show that Defendant actually was the payor of Plaintiff's wages.

As Defendant has pointed out, the fact that Defendant was named as the sole defendant in the *Segovia* suit does not mean that Defendant was the proper defendant. While the Plaintiff class released Defendant and Chipotle Services, LLC, of all wage and hour claims for the specified time period, the fact that both parties were released is not evidence of a relationship between those parties. *See* Doc. 27 Ex. B to Judicial Notice. Rather, those parties only are related in the sense that both parties may have been involved in the events leading to the lawsuit. A release discharges the named parties to a settlement. *See Leaf v. City of San Mateo*, 104 Cal. App. 3d 398, 410 (1980). Had the Plaintiff class so desired, the President of the United States or the Governor of California also could have been released. Finally, the *Segovia* settlement notice likely referred to Defendant rather than Chipotle Services, LLC, because Defendant was the named defendant in the *Segovia* suit, not Chipotle Services, LLC.

In sum, Plaintiff has failed to show, based on the totality of the circumstances, that Defendant was Plaintiff's joint employer with Chipotle Services, LLC, under FEHA.

Plaintiff has not shown that a genuine issue of material fact exists as to whether Defendant could be considered Plaintiff's joint employer under FEHA.

Claims brought pursuant to the California Labor Code and the California common law theory of wrongful termination are analyzed using the same common law test to determine if an employment relationship exists. *See Ayala*, 59 Cal. 4th at 530-31; *Varisco*, 166 Cal. App. 4th at 1103-04. Under the common law, the principal inquiry is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S. G. Borello & Sons, Inc., v. Dept. of Indus. Relations*, 48 Cal.3d 341, 350 (1989) (quoting *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal.3d 943, 948 (1970)). Of chief importance is whether the hirer "retains all necessary control" over its operations. *See Borello*, 48 Cal. 3d at 357. The strongest evidence of the right to control is the hirer's right to discharge the worker without cause because "[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities." *Ayala*, 59 Cal. 4th at 531. Although the primary consideration in ascertaining the presence of a common law employment relationship is the extent of the hirer's right to control employees' work, California courts also have recognized a variety of secondary indicia drawn from the Second and Third Restatements of Agency. *See id.* at 532. Courts may consider:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* (quoting *Borello*, 48 Cal. 3d at 351).

Plaintiff relies on the same evidence to prove that Defendant is a joint employer under California common law as he did in his attempt to prove that Defendant was a joint employer under FEHA. As previously discussed, this evidence is insufficient to meet his burden on summary judgment. Plaintiff has not demonstrated that Defendant retained the necessary control over Chipotle restaurant employees to permit the characterization of Defendant as an employer. *See Ayala*, 59 Cal. 4th at 531-32. In other words, Plaintiff has not shown that Defendant had the power to hire Chipotle restaurant employees, supervise those employees' work, discipline those employees, or terminate those employees. Although Defendant drafted the employee handbook, Plaintiff has not proven that Defendant was involved in the application or enforcement of those policies. That Defendant wrote an employee handbook and had access to Chipotle restaurant employees' personnel files is unsurprising considering that Defendant owned and operated the Chipotle restaurants. Nor are those factors dispositive of an employment relationship. *See Vernon*, 116 Cal. App. 4th at 127; *see also McKenzie*, 834 F.2d at 933-34. Defendant did not pay Plaintiff's wages. The chain of command is not evidence of an employment relationship. *See Frank*, 3 F.3d at 1362. While Defendant was named as a defendant in the *Segovia* suit, that does not prove that Defendant was the proper defendant. Finally, the fact that both Defendant and Chipotle Services, LLC, were released by the Plaintiff class in the *Segovia* suit is not proof that the two entities are related to one another or that Defendant controls its subsidiaries to such a degree as to reach through those subsidiaries to control the subsidiaries' employees.

Regarding the secondary factors enumerated in *Ayala*, the Court observes that Plaintiff was not an independent contractor hired to complete a concrete, isolated task. *See Borello*, 48 Cal. 3d at 357-59. The Chipotle Encinitas restaurant managers supervised Plaintiff, and Plaintiff was hired for an entry-level kitchen staff position that did not require a special skill set. Defendant supplied all necessary instrumentalities and tools on-site at the Chipotle restaurants where Plaintiff worked. Plaintiff was an hourly, at-will employee whose contract could be terminated at any time by Plaintiff or a high-

ranking manager of the Chipotle Encinitas restaurant. Plaintiff's role in the kitchen was a part of Defendant's regular business in the sense that Defendant owned and operated the restaurants where Plaintiff prepared food for customers. Finally, the employee handbook that Defendant provided explicitly stated that the handbook was not to be construed as a contract. *See* Doc 29 Ex. 6. As the *Ayala* court noted, "[i]t is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission of control by the other." 59 Cal. 4th at 538-39 (quoting Restatement (Second) of Agency § 220, cmt. m (1958)). While the handbook indicates that employees represent "Chipotle," "Chipotle" does not necessarily refer to Defendant. *See* Doc 29 Ex. 6. Rather, "Chipotle" also could refer to the individual store where Plaintiff worked, or to Chipotle Services, LLC, which hired Plaintiff. *See id.* Despite the ambiguity created by the handbook's use of "Chipotle" as a catch-all that, depending on context, could refer to all Chipotle entities or only one, Plaintiff has not produced evidence of an employment relationship to satisfy the majority of the secondary factors that California courts consider.

Ultimately, Plaintiff has failed to produce sufficient evidence to show that a genuine issue of material fact exists as to whether Defendant was Plaintiff's joint employer under the California Labor Code and California common law. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claims.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment. The Court instructs the Clerk of Court to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: August 8, 2016

HON. MICHAEL M. ANELLO
United States District Judge

19

15cv1000-MMA (JLB)